Gary J. MILNER, et al., Respondents,

v.

**FARMERS INSURANCE EXCHANGE, Appellant.**

No. A06–178.

Court of Appeals of Minnesota.

Dec. 26, 2006.

Barry G. Reed, Timothy J. Becker, Anne Regan, Zimmerman Reed, PLLP, Minneapolis, MN, for respondents.

Lewis A. Remele, Jr., Charles E. Lundberg, Frederick E. Finch, Bassford Remele, Minneapolis, MN, for appellant.

Considered and decided by KALITOWSKI, Presiding Judge; DIETZEN, Judge; and HUSPENI, Judge.*

## OPINION

KALITOWSKI, Judge.

Appellant Farmers Insurance Exchange challenges the district court's denial of its posttrial motions claiming the district court (1) erred by not dismissing this case on the ground of res judicata; (2) exceeded its statutory authority by granting injunctive relief and awarding civil penalties to respondents; and (3) abused its discretion in its award of attorney fees to respondents.

## FACTS

Respondents brought a multi-count class action suit against appellant alleging that appellant failed to pay them and a class of similarly situated employees overtime compensation pursuant to the Minnesota Fair Labor Standards Act (MFLSA). At the same time, a group of similarly situated employees was engaged in federal multi-district litigation in Oregon against appellant based on alleged violations of both the federal Fair Labor Standards Act (FLSA) and the MFLSA.

Respondents here are Minnesota claims representatives employed by appellant who allege that they were incorrectly labeled as exempt from the MFLSA and therefore were entitled to back pay for overtime hours worked. Plaintiffs in the federal case are claims representatives from several states, including Minnesota, who were employed by appellant, who also claim they were incorrectly labeled as exempt from both the FLSA and state laws and therefore are due back pay for overtime hours worked. The two cases, which proceeded more or less concurrently and independently to judgment, had membership that largely overlapped. The federal plaintiff group has approximately 229 members and the state court class has 194 members. Of the 194, only 25 members were not members of both the federal plaintiff group and the state plaintiff group. The Minnesota district court specifically determined that the decision on appeal here applies only to these 25 Minnesota plaintiffs.

At trial the jury found that respondents, the 25 people to whom the district court's order applies, did not prove the dollar value of unpaid hours worked. But the jury also found that appellant had violated the MFLSA by misclassifying respondents. Following the jury verdict, the district court issued an order permanently enjoining appellant from misclassifying its claims representatives and imposing a civil penalty to be paid to the 25 class members. The district court further decided that respondents had prevailed at trial and therefore awarded them attorney fees.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## ISSUES

1. Did the district court err by not dismissing the case on grounds of res judicata?

2. Did the district court exceed its statutory authority by ordering injunctive relief and payment of civil penalties to respondents?

3. Did the district court abuse its discretion in its award of attorney fees to respondents?

## ANALYSIS

### I.

 Appellate courts review application of res judicata de novo. *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004). Under Minnesota law:

Res judicata applies as an absolute bar to a subsequent claim when (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter.

*Id.* All four factors must be satisfied for res judicata to apply. *Id.* "Res judicata not only applies to all claims actually litigated, but to all claims that could have been litigated in the earlier action." *Id.* "The common test for determining whether a former judgment is a bar to a subsequent action is to inquire whether the same evidence will sustain both actions." *Id.* (quotation omitted).

 Appellant argues that the district court erred by refusing to apply res judicata. It argues that because a judgment was issued in the federal court action before a judgment was issued in the state court action, the federal court disposition controls and precludes plaintiffs from fur-

ther pursuit of the state court claim. We disagree.

Appellant does not dispute that, although the federal plaintiff group and the state class shared some members in common, not every member of the federal plaintiff group was also a member of the state class. But appellant contends that, because all state class members are in privity with each other and some state class members were in privity with the federal plaintiff group, all state class members, even those who are not members of the federal plaintiff group, are nonetheless in privity with the federal plaintiff group. We disagree.

 "Privity requires a person so identified in interest with another that he represents the same legal right." *Beutz v. A.O. Smith Harvestore Prods., Inc.*, 431 N.W.2d 528, 533 (Minn.1988). Here, the federal group did not represent the full interests of the state class members who had opted out of the federal litigation. The federal plaintiffs were seeking, in part, individual damages. And without being a party to the federal action, state class members could not, and did not, offer proof of their damages in federal court. We thus conclude that, because the federal plaintiff group did not represent the 25 state class members' interests, the parties are not in privity and application of res judicata is inappropriate.

The parties disagree as to whether Oregon or Minnesota law controls. But we note that both states' caselaw requires that the same parties or parties in privity must appear in both cases in order for res judicata to apply. *Hauschildt*, 686 N.W.2d at 840; *Nelson v. Emerald People's Util. Dist.*, 318 Or. 99, 862 P.2d 1293, 1297 (1993). Because we conclude that the plaintiffs in the federal case are not the same parties nor parties in privity with the plaintiffs/respondents in this case, we need

not reach the issue of which law to apply. Under either law, this challenge fails.

## II.

■ Appellant argues that the district court lacked statutory authority to impose injunctive relief and civil penalties under the MFLSA. We disagree.

Appellate courts review questions of statutory interpretation de novo. *Meyer v. Best W. Seville Plaza Hotel*, 562 N.W.2d 690, 692 (Minn.App.1997), *review denied* (Minn. June 26, 1997). "When interpreting a statute, [appellate courts] first look to see whether the statute's language, on its face, is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277 (Minn.2000) (quotation omitted).

Appellant claims the district court erred in relying on Minn.Stat. § 177.27, subd. 8, as authority for its grant of injunctive relief and award of civil penalties. We disagree. Minn.Stat. § 177.27, subd. 8, applies when, as here, employees directly bring a civil action against the employer in district court. After specifying the remedies available under subdivision 8, subdivision 8 further states: "In addition, in an action under this subdivision the employee may seek damages and other appropriate relief provided by subdivision 7 and otherwise provided by law." Minn.Stat. § 177.27, subd. 7, addresses the penalties the Commissioner of the Department of Labor may impose on an employer that has violated MFLSA. Included in the Commissioner's authority is the power to issue a "cease and desist order" and to award "a civil penalty of up to $1,000 for each violation for each employee." Minn. Stat. § 177.27, subd. 7.

Here, the district court correctly interpreted the legislature's specific authorization in subdivision 8 for plaintiffs in a civil action to seek "other appropriate relief provided by subdivision 7," as authority for the court to award both damages to the employees under subdivision 8, and an injunction and civil penalties under subdivision 7.

■ By its plain language, subdivision 8 exists in the statute to grant rights to employees to seek remedies in civil actions. And the plain meaning of the "in addition" language grants employees the opportunity to seek more remedies than those already enumerated in subdivision 8. The language is not limiting, but rather it is granting. We thus conclude that in order to give effect to the legislative language, the "in addition" language unambiguously permits a civil plaintiff to seek injunctive relief and civil penalties as well as damages.

Moreover, even if the language in subdivision 8 is ambiguous, the legislative history of this section supports our holding. *See* Minn.Stat. § 645.16 (2004) (providing that when words of a law are not explicit, legislative intent may be determined by a number of factors, including "the contemporaneous legislative history").

The bill to amend the MFLSA, House File 2841, was first introduced in the House on January 29, 1996, by Representative Leighton. The bill then traveled through the Labor–Management Relations and Judiciary committees before being introduced in the Senate on March 11, 1996. In the House Judiciary Committee meeting on February 9, 1996, an assistant attorney general with the Minnesota Attorney General's office spoke in support of the bill, saying that the subdivision 7 language "would allow for injunctive relief and it would allow for the imposition of a civil penalty where there has been a willful or repeated violation[ ]." She further stat-

ed that "[t]he goal of this is to, one, make the provision for civil cause of action parallel with the remedies provided for the commissioner, and also to make the employee whole in respect to compensatory damages."

In the Labor–Management Relations Committee meeting held on February 5, 1996, a representative of the state attorney general's office spoke in support of the bill. He stated that "there is a lot of emphasis throughout this legislation on the private cause of action to allow employees to empower employees to essentially take care of their own problems." He further stated that "the private civil remedies are the same as the commissioner's remedies."

The bill returned from the Senate with a minor modification and was re-passed by the House on March 21, 1996. Although the bill was modified during the legislative process, the relevant provisions were not. Thus, the contemporaneous legislative history supports our interpretation of the plain language of the statute. Because the district court's order granting injunctive relief and civil penalties is consistent with our reading of the statute, the court did not err.

Appellant argues that an injunction is inappropriate because the district court did not address whether respondent's remedy at law is adequate and whether the injunction is necessary to prevent "great and irreparable injury." *Cherne Indus., Inc. v. Grounds & Assocs., Inc.,* 278 N.W.2d 81, 92 (Minn.1979). Here, the legislative history instructs us that the legislature intended that the district court's powers mirror those of the Commissioner. Subdivision 7 requires that the Commissioner issue a case and desist order if the employer has violated the MFLSA. Minn. Stat. § 177.27, subd. 7. The Commissioner need not determine that the employee's remedy at law is inadequate nor that the

cease and desist order is necessary to prevent great and irreparable harm. Because here the district court is granted the same powers as the Commissioner, we conclude that the court may issue an injunction, the equivalent of a cease and desist order, without making the generally required findings.

■ Appellant further argues that even if the district court was entitled to assess civil penalties, the district court erred in determining that the civil penalties should be paid directly to individual plaintiff class members. We agree.

■ By definition, a civil penalty is "a fine assessed for a violation of a statute or regulation." *Black's Law Dictionary* 1154 (7th ed. 1999). Furthermore, "[p]enalties ... are not recoverable or retainable as such by the person in whose favor they are framed...." *Id.* (quotation omitted); *see also Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) (presuming civil penalties are payable to the government, even where the statute is silent).

Here, Minn.Stat. § 177.27, subd. 7, is the source of the district court's authority to award civil penalties in a subdivision 8 action as discussed above. Although subdivision 7 does not specify to whom civil penalties should be paid, the parties do not dispute that in a subdivision 7 proceeding any civil penalties would be paid to the state. Nothing in subdivision 8 suggests that the legislature intended something different for a subdivision 8 award of civil penalties.

Speaking in support of the bill before the House Committee on Labor–Management Relations meeting of February 5, 1996, a deputy counsel with the state attorney general's office stated:

This legislation is primarily an effort to conform the enforcement and remedy

provisions in our state wage and hour law to the enforcement and remedies provisions that exist for all of our other employment laws. There is nothing new here it's simply an attempt to take the minimum wage and overtime laws and put them on the same plane as the other laws that govern the employment relationship in Minnesota.

Hearing on H.F. No. 2841 Before the House Comm. on Labor–Management Relations (Feb. 5, 1996) (statement of Mr. Strand).

Two statutes that govern the employment relationship in Minnesota in 1996 are the federal FLSA, 29 U.S.C. §§ 201–19 (1994), and the Minnesota Human Rights Act, Minn.Stat. §§ 363.01–.20 (1994). The FLSA states that "[c]ivil penalties collected for violations ... shall be deposited in the general fund of the Treasury." 29 U.S.C. § 216(e) (regarding child labor). The Minnesota Human Rights Act states that a respondent found to be in violation of the Act shall be made "to pay a civil penalty to the state. This penalty is in addition to compensatory and punitive damages to be paid to an aggrieved party." Minn.Stat. § 363.071, subd. 2 (1994). In order to bring the MFLSA's civil penalties provision into conformity with these other statutes, the civil penalties must be paid to the state rather than to the individual plaintiffs.

■■■ We conclude that the civil penalties collected pursuant to both subdivision 7 and subdivision 8 are payable to the state and not to individual litigants. We therefore modify the district court's award of civil penalties by making them payable to the State of Minnesota, just as they would be if assessed by the Commissioner.

### III.

■■■ "[T]he district court retains discretion to determine which party, if any,

qualifies as a prevailing party" when considering a request for costs incurred. *Benigni v. County of St. Louis,* 585 N.W.2d 51, 54–55 (Minn.1998). We reject appellant's argument that the district court erred in determining that respondents were the prevailing party. Although respondents did not prove the dollar value of unpaid hours worked, the jury found that appellant had violated MFLSA by misclassifying its employees. We thus conclude that it was within the district court's discretion to determine that, having proven a statutory violation, respondents were the prevailing party.

■■■ We review an award of attorney fees and costs for abuse of discretion. *Becker v. Alloy Hardfacing & Eng'g Co.,* 401 N.W.2d 655, 661 (Minn.1987). Here, the district court followed the lodestar-multiplier method for determining appropriate attorney fees. The lodestar method is appropriate in cases that secure a public or common benefit although damages may be small, where injunctive relief is sought, or where a fee-shifting statute applies. *Johnston v. Comerica Mortgage Corp.,* 83 F.3d 241, 245 (8th Cir.1996). The lodestar attorney fees value is calculated by multiplying the reasonable hourly rate by the reasonable number of hours expended. *Ray v. Miller Meester Adver., Inc.,* 664 N.W.2d 355, 371 (Minn.App.2003), *aff'd,* 684 N.W.2d 404 (Minn.2004). A multiplier can then be used to reflect the uniqueness of the case. *See In re Xcel Energy, Inc.,* 364 F.Supp.2d 980, 999 (D.Minn.2005) (using lodestar cross check of a percent-of-benefit award).

Appellant argues that because the individual respondents failed to receive a damages award, the district court erred in determining the number of hours for which respondents' attorneys were entitled to be paid by appellant. We disagree.

■ "[T]he reasonable value of attorneys' fees is a question of fact, and the findings of the trial court must be upheld by a reviewing court unless clearly erroneous." *Amerman v. Lakeland Dev. Corp.*, 295 Minn. 536, 537, 203 N.W.2d 400, 400–01 (1973). Here, respondents' attorney submitted voluminous documentation and the district court made particularized findings regarding what attorneys in what firms were entitled to fees, the amount of time to reimburse, and the reasonable hourly fee to assess. *State by Head v. Paulson*, 290 Minn. 371, 373, 188 N.W.2d 424, 426 (Minn.1971) (providing factors a court should consider when awarding attorney fees).

Appellant argues that under *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the district court should reduce an attorney fee award for unsuccessful claims that are unrelated to the successful claims. *See Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 628 (Minn.1988) (adopting *Hensley*). Here, the record indicates that the district court extensively reviewed the attorney fees and costs requests. The court listed several factors that contributed to its decision that the hours worked were reasonable, including the current and future benefit to the plaintiff class and the duration and complexity of the litigation. *Id.* at 630 ("[W]hen the reasonableness of the 'hours expended' component of the fee claim is challenged, the trial court should scrutinize it, and either make findings or otherwise concisely explain why it felt the hours claimed are reasonable or unreasonable."). The court determined that the requested attorney fee lodestar value should be reduced by 10%.

■ Although the district court did not specify the reason for the 10% reduction, we note that in this complex case the issue of damages was not unrelated to the other issues in this case. We further note that much of the case's complexity is the result of zealous advocacy and the record reflects the copious efforts expended by both parties on pre- and post-trial matters. Thus, on this record, we cannot say that the district court clearly erred by awarding 90% of the requested lodestar attorney fees value.

Appellant also challenges the district court's decision to apply a 1.5 multiplier to the lodestar attorney fee value to further reward respondents' counsel for its exceptional success in this litigation. In support of this decision, the district court cited the current and future benefit to the plaintiff class, the duration and complexity of the litigation, and the attorneys' pursuit of socially beneficial litigation.

■ Appellant argues that, compared to the results achieved at trial in the federal case, which included a substantial damage award for individual plaintiffs, the results in the state case were not exceptionally successful and therefore no multiplier is warranted. We agree.

■ Although *Hensley* and *Anderson* allow a multiplier to be applied to the lodestar attorney fee figure, applicability should be determined on a case-by-case basis. In deciding whether to apply a multiplier, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941. "[I]n some cases of exceptional success an enhanced award may be justified." *Id.* at 435, 103 S.Ct. at 1940. Here, the district court did not address the fact that the respondents pleaded $16 million in damages and the jury awarded $0. While respondents were successful in obtaining an injunction and civil damages, the record does not support a conclusion that this represents extraordinary success that warrants a multiplier, particularly in light of the fact that at trial

the federal plaintiffs group received a damage award of $3.9 million. *See generally In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litigation,* 336 F.Supp.2d 1077 (D.Or.2004), *rev'd on other grounds,* 466 F.3d 853 (9th Cir.2006).

We agree with the district court that this case was complex. But that complexity is reflected in the lodestar value, which includes the hours spent working on this case. We thus conclude that on this record the district court abused its discretion in applying a multiplier to respondents' attorney fee award. We therefore remand the attorney fee award for an award of the lodestar attorney fees as determined by the district court without the 1.5 multiplier.

## DECISION

We reject appellant's argument that the district court erred by failing to apply res judicata and not dismissing this case.

Minn.Stat. § 177.27, subd. 8, through its reference to subdivision 7, allows a party to seek injunctive relief and civil damages in a private action. But civil penalties, whether received pursuant to a case brought under subdivision 7 or 8, are payable to the state and not to individual litigants.

Because the case is complex, the issues are interconnected, and respondents successfully gained some, if not all, requested relief, the district court's award of 90% of the requested lodestar value is appropriate. But because an attorney fees award that is greater than the lodestar value is appropriate only in cases of extraordinary success, we conclude that on this record an enhanced award is inappropriate.

**Affirmed in part as modified, reversed in part, and remanded.**