# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-2959

_____

Mayo Clinic, Mayo Foundation for
Medical Education and Research,
and Cerner Corporation

*Plaintiffs - Appellees*

v.

Peter L. Elkin, M.D.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 15, 2012
Filed: August 27, 2013
[Unpublished]

_____

Before BYE, BEAM, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

This case arises out of a trade secret dispute between Mayo Clinic ("Mayo")
and Dr. Peter L. Elkin. A jury returned a verdict in favor of Mayo on its claims of
trade secret misappropriation, conversion, breach of contract, interference with

existing and prospective contractual relationships, and breach of fiduciary duty. The jury also found for Elkin on his breach-of-contract counterclaim against Mayo. Following trial, the district court issued an injunction against Elkin, requiring him to return the software at issue and to cease all use and possession thereof. The district court also ordered Elkin to pay Mayo's attorneys' fees and costs in the amount of $1,900,139.90. Elkin appeals the district court's exclusion of certain expert testimony at trial, entrance of jury findings, issuance of an overbroad injunction, and award of attorneys' fees. We affirm in part and reverse in part.

I

Elkin began working for Mayo in 1996 as a clinician and researcher. During his employment with Mayo, Elkin developed a version of Natural Language Processing (NLP) software for use with medical text. NLP allows computer users to complete data searches using plain language rather than Boolean logic—essentially the same technique Google employs to allow users to search the internet. During his tenure with Mayo, Elkin created a form of this software which allows medical practitioners to search hospital databases using ordinary language. Elkin claims ownership over the software as a derivative of his work prior to employment with Mayo. Mayo disagrees and argues it acquired ownership of the software pursuant to its Intellectual Property Policy.

In 2002, Mayo licensed the software to Conceptual Health Solutions (CHS), which commercialized and marketed it. In 2008, CHS and its software license were acquired by Cerner, a company specializing in healthcare technology. Also in 2008, Elkin left Mayo to begin working for Mount Sinai Hospital in New York. Upon his departure, Elkin ordered his staff to erase certain hard drives and took with him a stack of disks containing code for the software. Elkin contends Mayo authorized him to take the disks; Mayo disagrees. In November of 2008, Elkin gave a presentation at a conference of the American Medical Information Association. Representatives

from Cerner attended the conference and viewed Elkin's presentation. Afterward, the Cerner representatives contacted Mayo and complained Elkin had presented software to which Cerner held an exclusive license. Mayo then contacted Elkin, asking him to return the disks and cease presenting the software.

When Elkin did not respond, Mayo filed suit in Minnesota state court and opted to withhold a royalty payment of $143,220.20 due Elkin under one of the licensing agreements. Elkin removed the suit to the District of Minnesota and also filed suit against both Mayo and Cerner in the federal district court for the Southern District of New York. Ultimately, the suits were consolidated in the District of Minnesota.

Prior to trial, Elkin sought leave to introduce expert testimony through himself and Dr. Tom Love. With respect to his own testimony, Elkin argued that because he is an expert in the field, he should be permitted to testify as an expert regarding similarities between the current Mayo software and software he produced prior to working for Mayo. The court denied Elkin's request on the grounds that the current Mayo software had been edited since Elkin's departure and Elkin had not seen the newly added code; the court reasoned Elkin should not be permitted to testify to facts outside of his knowledge. The court also excluded Love's testimony on Daubert grounds, finding the methods he used had not been accepted by the scientific community.

After a five-day trial, the jury rendered a special verdict, finding Elkin had (1) breached his employment contract with Mayo; (2) intentionally interfered with an existing contractual relationship between Mayo and Cerner; (3) intentionally interfered with a prospective contractual relationship between Mayo and Cerner; (4) willfully and maliciously misappropriated one or more trade secrets belonging to Mayo; (5) intentionally exercised control over the software or its source code contrary to Mayo's rights; and (6) breached a fiduciary duty owed to Mayo. The jury also

found Mayo had failed to pay Elkin the withheld royalties and awarded him $143,222.20.

Following the trial, the court entered a final order memorializing the jury's findings and enjoining Elkin from any use or disclosure of the software and requiring Elkin to return all data and storage media containing any part of the software. Elkin filed a motion to alter or amend the order, arguing it did not fully and accurately reflect the jury's findings or delineate the parties' prospective obligations. The court denied Elkin's motion. Based on the jury's finding that Elkin's misappropriation had been willful and malicious, the court granted Mayo's request for attorneys' fees and ordered Elkin to pay Mayo $1,900,139.90 for costs associated with the litigation. Elkin subsequently filed this appeal.

II

Elkin appeals the district court's exclusion of his and Dr. Love's expert testimony at trial, denial of his motion to alter or amend the court's order, issuance of an overbroad injunction, and award of attorneys' fees in favor of Mayo. We review each claim for an abuse of discretion. See Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 296 (8th Cir. 1996) ("Decisions concerning the admission of expert testimony lie within the broad discretion of the trial court, and these decisions will not be disturbed on appeal absent an abuse of that discretion."); Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998) ("A district court has broad discretion in determining whether to grant a [Fed. R. Civ. P. 59(e)] motion to alter or amend judgment, and this court will not reverse absent a clear abuse of discretion."); Smith v. Ark. Dep't of Corr., 103 F.3d 637, 644 (8th Cir. 1996) ("[W]e review the district court's grant of injunctive relief for an abuse of discretion."); Consol. Beef Indus., Inc. v. New York Life Ins. Co., 949 F.2d 960, 966 (8th Cir. 1991) ("This court's standard of review of an order awarding or denying attorney's fees is abuse of discretion.").

-4-

Because each issue raised on appeal is subject to an abuse-of-discretion review, our court's iteration of that standard bears mention:

> An abuse of discretion occurs 'when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment.'

E.E.O.C. v. Prod. Fabricators, Inc., 666 F.3d 1170, 1172 (8th Cir. 2012) (quoting Kern v. TXO Prod. Corp., 738 F.2d 968, 970 (8th Cir. 1984)).  Based on the record before us, we find no abuse of discretion which would require reversal with respect to Elkin's first three claims.  Accordingly, we affirm the district court's evidentiary ruling regarding Elkin's expert testimony, order memorializing the jury's findings, and permanent injunction against Elkin.  See 8th Cir. R. 47B.

We are, however, concerned by the district court's award of $1,900,139.90 in attorneys' fees and costs to Mayo.  Of the ten claims[1] brought by Mayo against Elkin, only the statutory trade secret claim supports an award of attorneys' fees.  See Minn. Stat. § 325C.04 (permitting a court to award reasonable attorneys' fees to the prevailing party on a claim for willful and malicious trade secret misappropriation).  Yet, of $2,447,058.36 in total attorneys' fees incurred in this litigation, Mayo claims $1,900,139.30 are attributable to its trade secret claim.  We find this figure suspect,

---

[1]Mayo's complaint against Elkin sets forth the following claims:  (1) breach of contract, (2) interference with an existing contractual relationship, (3) interference with a prospective contractual relationship, (4) statutory trade secret misappropriation, (5) common law trade secret misappropriation, (6) trespass to chattels, (7) conversion, (8) breach of fiduciary duty, (9) Mayo's request for declaratory judgment regarding ownership of the software, and (10) Cerner's request for declaratory judgment regarding ownership of the software.

and a review of the district court's order granting Mayo's request for attorneys' fees does not assuage our concerns.

Under the heading of a traditional "lodestar" analysis, see Milner v. Farmers Ins. Exch., 748 N.W.2d 608, 620 (Minn. 2008) ("We have approved the use of the lodestar method for determining reasonable attorneys fees."), the district court devoted considerable time to lambasting Elkin for his employment of time-consuming litigation strategies. See, e.g., Order Granting Pls.' Req. for Att'ys Fees at 5 ("In short, Ekin's contumacious litigation strategy significantly increased the time and resources required to resolve the present action."). Mayo, too, emphasized Elkin's recalcitrance in its supporting documentation. See Decl. of Peter Galindez, Jr., in Supp. of Mayo's Req. for Att'ys Fees at 2-3 (noting Elkin's "forc[ed] Mayo to engage in unnecessary motion practice . . . to file multiple motions to compel fact and expert discovery . . . and to engage in *Daubert* motion practice").

The propriety of Elkin's litigation tactics aside, we find insufficient support in the record for this staggering award on the basis of Mayo's trade secret claim alone. Elkin argues the documents filed by Mayo in support of its request for attorneys' fees fail to distinguish between work performed in furtherance of Mayo's trade secret claim and its remaining claims. We agree. The broad, monthly summary descriptions provided by Mayo are hardly the "detailed affidavit of attorney's fees and costs, showing the fees broken down on an hourly basis" the district court makes them out to be. See Order Granting Pls.' Req. for Att'ys Fees at 4 (quoting Willhite v. Collins, 459 F.3d 866, 869 (8th Cir. 2006)). Moreover, while a "common core of facts" may lessen a district court's burden to delineate between amounts attributed to individual claims, see Hensley v. Eckerhart, 461 U.S. 424, 435 (1983), the court is still charged with the task of rendering a reasonable award. Without more, we cannot conclude the district court's award here was reasonable.

## III

For the foregoing reasons, the district court's order granting Mayo's request for attorneys' fees is vacated and remanded for further consideration consistent with this opinion. On remand, Mayo is directed to provide more detailed documentation in support of its request. In acknowledgment of Mayo's contention that its documentation was provided in summary form to avoid burdening the court with over 4,000 pages of original bills, we trust Mayo can strike an appropriate balance between the 4,000 pages in existence and the 5-page chart provided in Exhibit 2 to Adam Steinert's declaration in support of Mayo's request for attorneys' fees.

The district court's judgments with respect to the remaining issues raised by Elkin on appeal are affirmed.

_____