# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A24-1713

State of Minnesota, by its Commissioner of Transportation,
Appellant,

vs

David P Williams, doing business as Bear Track Outfitting Co. et al.,
Respondents Below,

Mike's Holiday,
Respondent.

**Filed August 4, 2025**
**Affirmed**
**Bratvold, Judge**

Cook County District Court
File No. 16-CV-19-192

Keith Ellison, Attorney General, Jeffrey S. Thompson, Andrew D. Gross, Assistant Attorneys General, St. Paul, Minnesota (for appellant)

Tyson Smith, Richard T. Furlong III, Smith Law, PLLC, Grand Marais, Minnesota (for respondent)

Considered and decided by Bratvold, Presiding Judge; Larson, Judge; and Reilly, Judge.[*]

## SYLLABUS

Reasonable attorney fees and expenses awarded in an eminent-domain proceeding under Minn. Stat. § 117.031(a) (2024) must relate to the work performed to obtain the final

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

judgment or award for damages and may include fees incurred in defending an objection to the eminent-domain proceeding.

## OPINION

**BRATVOLD**, Judge

Appellant State of Minnesota by its Commissioner of Transportation (MnDOT) challenges the district court's judgment awarding respondent Mike's Holiday attorney fees and expenses in an eminent-domain proceeding. MnDOT sought a temporary easement and fee acquisition so it could improve a highway in Grand Marais. MnDOT contends that the district court's award must be reversed and remanded for two reasons: first, the district court erred as a matter of law by awarding attorney fees not authorized by Minn. Stat. § 117.031(a) and, second, the district court abused its discretion by misapplying the lodestar method.

The first issue requires us to interpret Minn. Stat. § 117.031(a), which unambiguously provides that a district court must award a property owner reasonable attorney fees and expenses if the final judgment or damages award exceeds $25,000 and is more than 40% greater than the condemning authority's last written offer before petitioning for condemnation. The district court determined that Mike's Holiday was eligible to recover attorney fees and expenses under Minn. Stat. § 117.031(a), and MnDOT does not challenge the eligibility determination on appeal. Instead, MnDOT posits that the district court erred by awarding attorney fees and expenses not authorized by Minn. Stat. § 117.031(a) because the award included fees and expenses incurred for Mike's Holiday's failed objection to the condemnation petition.

We conclude that the district court did not err in awarding reasonable attorney fees and expenses to Mike's Holiday under Minn. Stat. § 117.031(a). First, the district court stayed within its statutory authority because it determined the fees and expenses related to the work performed to obtain the final judgment or award for damages and that work included defending an objection to the condemnation petition. Second, the district court did not abuse its discretion in applying the lodestar method and determining the amount of reasonable fees and expenses that Mike's Holiday was entitled to under Minn. Stat. § 117.031(a). Thus, we affirm.

## FACTS

In September 2019, MnDOT petitioned to condemn 12 parcels of land to make improvements to Trunk Highway 61 in Grand Marais. The petition named 40 respondents—the owners of the 12 parcels—including Mike's Holiday, which owns parcel 50 situated at the intersection of Highway 61 and Broadway Avenue. Mike's Holiday improved parcel 50 with a convenience store, a canopy, and two rows of gas-pump islands with 16 fueling stations.

MnDOT's eminent-domain petition as to parcel 50 sought, first, a temporary easement on parcel 50 during the construction and, second, acquisition of the remaining fee interest in over 6,000 feet encumbered by a permanent highway easement. The temporary easement ran along Highway 61 and extended under the canopy. The petition also asked the district court to appoint commissioners to appraise the damages for the requested taking.

In December 2019, Mike's Holiday noticed its objection to the petition. The objection included that the petition did not "adequately describe" the land to be taken "with certainty" and that the "[l]ack of certainty in the land to be taken renders impossible the determination of what compensation is just." Mike's Holiday specifically contended that the petition did not allege a "taking of access," yet MnDOT's plans "show that [Mike's Holiday] will be deprived of Highway access."

After an evidentiary hearing, the district court denied the objections raised by Mike's Holiday and concluded that MnDOT's proposed takings were "necessary, for a public use, and authorized by law." The district court then granted the petition as to parcel 50 and referred the matter to appointed commissioners to "ascertain and report the amount of damages" incurred by Mike's Holiday because of the taking.

In June 2022, the commissioners conducted a hearing at which Mike's Holiday presented expert testimony that just compensation totaled $465,000, including $16,678 for the fee taking, $18,339 for the temporary-easement taking, and $430,000 for severance damages.[1] MnDOT offered expert testimony that just compensation for the taking was $14,300.

In January 2023, the commissioners filed a report with the district court, awarding $210,017 to Mike's Holiday as just compensation for the taking of parcel 50, including

---

[1] Severance damages are a claim for construction-related interference and "must arise from changes in the land actually taken, and not merely from the impact of the project as a whole." *County of Hennepin v. Laechelt*, 949 N.W.2d 288, 291 (Minn. 2020). In its brief to this court, Mike's Holiday states that it offered witness testimony at the commissioner hearing to support its claims that "MnDOT's use of the temporary easement taking made it nearly impossible to access [the Mike's Holiday] parking lot."

$16,678 for the fee taking, $18,339 for the temporary-easement taking, and $175,000 for severance damages.

MnDOT appealed the commissioners' award for parcel 50 to the district court, arguing that the award "is excessive and that the damages for the taking of said premises are less" than that award. Mike's Holiday cross-appealed the commissioners' award, arguing that "the just compensation payable for the taking of Parcel 50 is no less than $465,000."

In March 2024, Mike's Holiday and MnDOT entered into a settlement agreement in which they agreed to dismiss their appeals, reinstate the commissioners' award, and stipulate to modifying the amount of just compensation to $100,000. The settlement also reserved Mike's Holiday's right to seek reasonable attorney fees and expenses under Minn. Stat. § 117.031(a). Mike's Holiday moved for a statutory award of attorney fees and expenses, and MnDOT opposed the motion.

After a hearing, the district court issued findings of fact, conclusions of law, and an order for judgment, which it later amended to award fees incurred for bringing the fee motion. The district court found that MnDOT's final written offer for the taking was $14,600. The district court concluded that Mike's Holiday was entitled to attorney fees and expenses because the final judgment exceeded $25,000 and was more than 40% greater than MnDOT's final written offer, as provided in Minn. Stat. § 117.031(a). The amended award of statutory fees and expenses was $127,657.10, which included $121,342.60 in attorney fees, survey costs, and appraisal costs as well as $6,332.50 in attorney fees and expenses to bring the motion.

5

MnDOT appeals.

## ISSUES

I.  Did the district court award attorney fees and expenses outside the scope authorized by Minn. Stat. § 117.031(a)?

II. Did the district court abuse its discretion in awarding Mike's Holiday attorney fees and costs?

## ANALYSIS

Just compensation for the taking of private property by government is guaranteed by the Minnesota and United States Constitutions. Minn. Const. art. I, § 13; U.S. Const. amend. V. Attorney fees incurred in securing just compensation, however, "are not an element of 'just compensation'" and thus are available only if authorized by "appropriate legislation." *State by Spannaus v. Carter*, 221 N.W.2d 106, 107 (Minn. 1974). Minnesota Statutes section 117.031(a) *requires* an award of attorney fees and expenses in some circumstances:

> If the final judgment or award for damages, as determined at any level in the eminent domain process, is more than 40 percent greater than the last written offer of compensation made by the condemning authority prior to the filing of the petition, *the court shall award the owner reasonable attorney fees, litigation expenses, appraisal fees, other experts fees, and other related costs in addition to other compensation and fees authorized by this chapter. . . .* The final judgment or award of damages shall be determined as of the date of taking. No attorney fees shall be awarded under this paragraph if the final judgment or award of damages does not exceed $25,000.

(Emphasis added.)

MnDOT maintains that the district court erred in awarding attorney fees to Mike's Holiday in two ways: (1) by awarding fees not authorized by section 117.031(a) and (2) by

6

abusing its discretion in determining that the amount of attorney fees sought by Mike's Holiday was reasonable under section 117.031(a). MnDOT does not challenge the attorney-fee award for bringing the fee motion; nor does MnDOT challenge the litigation expenses, appraisal fees, or other expert fees awarded by the district court. We address both of MnDOT's asserted errors about the attorney-fee award in turn.

## I. The district court did not award attorney fees and expenses outside the scope authorized by Minn. Stat. § 117.031(a).

MnDOT contends that attorney fees Mike's Holiday paid "[1] in an unsuccessful attempt to defeat the underlying condemnation Petition, [2] expended in motion practice on what appears to be completely different cases, and [3] expended on a never-filed inverse condemnation action, as a matter of law, are outside the scope of section 117.031(a)." Mike's Holiday argues that the district court's award is authorized by the applicable statute and that MnDOT failed to raise some of these arguments to the district court so has forfeited those arguments.

### A. MnDOT forfeited some of its arguments.

We consider which arguments MnDOT raised in its objection to Mike's Holiday's attorney-fee motion. Generally, we do not consider an issue raised for the first time on appeal; "[n]or may a party obtain review by raising the same general issue litigated below but under a different theory." *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988); *accord Crowley v. Meyer*, 897 N.W.2d 288, 293 (Minn. 2017) (quoting this aspect of *Thiele*).

As to its second argument, MnDOT maintains on appeal that Mike's Holiday's fee award included fees incurred in a different case and that recovery is not authorized under

7

section 117.031(a). But when the fee motion was before the district court, MnDOT argued only that Mike's Holiday requested fees "without justifying why such hours were reasonable or prudent in this case." MnDOT did not argue that the fees requested by Mike's Holiday were not authorized by section 117.031(a).

Similarly, as to MnDOT's third argument, MnDOT argues on appeal that Mike's Holiday's fee award included work on an inverse-condemnation claim and that recovery is not within the scope of section 117.031(a). But when the fee motion was before the district court, MnDOT argued only that the inverse-condemnation fees were "not reasonably part of this, and that claim remains available should Mike's Holiday successfully bring that inverse claim in the future." We conclude that MnDOT did not articulate during district court proceedings that its second and third arguments challenged the scope of fees available under section 117.031(a). We therefore decline to address the second and third statutory "scope" arguments that MnDOT raises for the first time on appeal.[2]

### B. The fees and expenses awarded are recoverable under Minn. Stat. § 117.031(a).

We turn to MnDOT's first argument—that the district court erred, as a matter of law, by awarding attorney fees "not recoverable under section 117.031(a)" when it awarded Mike's Holiday fees for defending its objection to the condemnation petition. MnDOT urges that "[c]hallenging a petition in an effort to defeat the taking in the first instance is antithetical to establishing or increasing the award of just compensation damages."

---

[2] Even so, this opinion considers the second and third arguments below, in the context in which MnDOT raised them in district court—whether the amount of the attorney-fee award is reasonable.

Whether attorney fees for an unsuccessful objection to a condemnation petition are available under section 117.031(a) is a question of statutory interpretation that we review de novo. *A.A.A. v. Minn. Dep't of Hum. Servs.*, 832 N.W.2d 816, 819 (Minn. 2013). When interpreting statutes, we seek "to ascertain and effectuate the intention of the legislature." *Minn. Internship Ctr. v. Minn. Dep't of Educ.*, 10 N.W.3d 178, 184 (Minn. 2024) (quotation omitted); *see also* Minn. Stat. § 645.16 (2024) ("The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature."). In interpreting section 117.031(a), we first determine whether the statutory language is clear and unambiguous. *See A.A.A.*, 832 N.W.2d at 819. A statute is ambiguous if "the statutory language is susceptible to more than one reasonable interpretation." *Spann v. Minneapolis City Council*, 979 N.W.2d 66, 73 (Minn. 2022) (quotation omitted). If the "legislature's intent is clearly discernable from plain and unambiguous language," the statute is unambiguous, "statutory construction is neither necessary nor permitted[,] and [we] apply the statute's plain meaning." *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn. 2001). If the statute is ambiguous, then "we may consider the canons of statutory construction" to determine which reasonable interpretation we should adopt. *Spann*, 979 N.W.2d at 73 (quotation omitted).

To "determin[e] whether a statute is ambiguous, we read the statute as a whole and interpret each section in light of the surrounding sections." *Id.* (quotation omitted). We construe "words and phrases . . . according to rules of grammar and according to their common and approved usage." Minn. Stat. § 645.08 (2024). And we consider the statute "as a whole to harmonize and give effect to all its parts" and presume that the legislature

9

"intended the entire statute to be effective and certain." *Save Lake Calhoun v. Strommen*, 943 N.W.2d 171, 177 (Minn. 2020) (quotations omitted).

MnDOT does not argue that section 117.031(a) is ambiguous. Rather, MnDOT urges that section 117.031(a) must be read along with Minn. Stat. § 117.031(b) (2024), which provides, "In any case where the court determines that a taking is not for a public use or is unlawful, the court shall award the owner reasonable attorney fees and other related expenses, fees, and costs in addition to other compensation and fees authorized by this chapter." From this, MnDOT reasons that, if Mike's Holiday's "objections to the Petition successfully resulted in denial of the Petition, [it] would have been eligible for reimbursement of reasonable costs and fees" under section 117.031(b). Because Mike's Holiday's objections to the petition were rejected, MnDOT urges us to recognize that section 117.031(b) "does not provide for an award of costs and fees to a landowner who is unsuccessful in objection to the Petition." MnDOT concludes, therefore, that "neither does section 117.031(a)."

MnDOT's argument is sound in part, but not in its conclusion. It is true that, if Mike's Holiday had prevailed in obtaining a determination "that a taking is not for public use or is unlawful," it would have been entitled to attorney fees and expenses under section 117.031(b). It is also true Mike's Holiday's objections were rejected and that section 117.031(b) does not authorize the recovery of attorney fees and expenses for a failed objection to a government taking as unlawful. But the district court's award to Mike's Holiday was not granted under section 117.031(b); the district court relied on section 117.031(a).

The unambiguous language of section 117.031(a) does not categorically preclude an award for attorney fees or expenses incurred in bringing an unsuccessful objection to a condemnation petition. Section 117.031(a) reflects three conditions for a mandatory award of attorney fees and expenses: (1) there is a "final judgment or award for damages" determined "at any level in the eminent domain process"; (2) the damages award is more than 40% greater than MnDOT's last written offer before filing the condemnation petition and exceeds $25,000; and (3) the owner has incurred "*reasonable* attorney fees, litigation expenses, appraisal fees, other expert fees, and other *related* costs." (Emphasis added.) Once a property owner is eligible for an award under section 117.031(a)—and eligibility is covered by the first two conditions—reasonableness and relatedness are the sole constraints on the award of attorney fees and expenses. We agree with the district court that section 117.031(a) entitles Mike's Holiday to all fees reasonably related to work performed to obtain a final judgment or award for damages in MnDOT's eminent-domain proceeding, including those associated with the unsuccessful objection to the taking.

We reject MnDOT's view that section 117.031(b) somehow restricts the award authorized by section 117.031(a). The plain language of section 117.031(b) does not discuss an award of attorney fees and expenses under section 117.031(a), much less restrict it. It is true that we read related statutes as a whole to harmonize and give effect to all parts. *See Strommen*, 943 N.W.2d at 177. While section 117.031 is silent on the interaction of parts (a) and (b), "[w]e have recognized that silence does not render a statute ambiguous unless the silence renders the statute susceptible to more than one reasonable

11

interpretation." *Rohmiller v. Hart*, 811 N.W.2d 585, 590 (Minn. 2012). Thus, MnDOT has failed to articulate any ambiguity related to these two provisions.

Both parts (a) and (b) of section 117.031 are unambiguous, and when read together, each part may be given full effect without reading part (b) as a restriction on part (a). First, section 117.031(a) is broader than section 117.031(b) because part (a) authorizes a district court to award attorney fees and expenses "at any level in the eminent domain process." Therefore, an award under section 117.031(a) is not limited to the district court's determination that a taking is unlawful, as it is under section 117.031(b). Second, section 117.031(a) authorizes an award of "reasonable attorney fees, litigation expenses, appraisal fees, [and] other expert fees," which is similar to the language used in section 117.031(b). But section 117.031(a) also authorizes an award of "other related costs *in addition* to other compensation and fees authorized by this chapter." (Emphasis added.)

Because section 117.031(a) awards attorney fees and expenses "in addition" to attorney fees and expenses authorized by other provisions in chapter 117, section 117.031(b) does not restrict the scope of attorney fees and expenses authorized by section 117.031(a). Indeed, MnDOT appears to recognize that if an owner receives an attorney-fee award under section 117.031(b)—for an unlawful taking—there is no possibility for an attorney-fee award under section 117.031(a) because there will be no "final judgment or award for damages." Thus, the two provisions operate in separate scenarios, and part (b) does not limit part (a).

To support its interpretation of section 117.031(a), MnDOT relies on several cases, all of which we find unpersuasive on this issue. First, MnDOT asserts that *State by Head*

*v. Savage*, 255 N.W.2d 32 (Minn. 1977), and *City of Minnetonka v. Carlson*, 265 N.W.2d 205 (Minn. 1978), constrain the availability of attorney fees to only the services "that assist an owner in attaining greater just compensation damages." But both *Savage* and *Carlson* are distinguishable from the district court's award here because each addresses a request for attorney fees for portions of a condemnation proceeding following the condemning authority's abandonment of the action. *See Savage*, 255 N.W.2d at 38; *Carlson*, 265 N.W.2d at 207. In other words, neither *Savage* nor *Carlson* involved a final judgment or award for damages to a property owner for just compensation. Unlike the condemning authorities in *Savage* and *Carlson*, MnDOT did not abandon the condemnation proceedings, and Mike's Holiday received a final judgment or award for damages. Thus, neither *Savage* nor *Carlson* supports MnDOT's interpretation of section 117.031(a).

MnDOT also relies on *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983), arguing that the "[l]odestar analysis requires removal from the tabulation of the reasonable hours expended any hours spent on any distinct claim upon which the claimant 'failed to prevail.'" But *Hensley* holds that hours should be excluded only where the failed claim "is distinct in *all respects*" from a party's successful claims. 461 U.S. at 440 (emphasis added).

As also discussed below, the district court concluded, within its discretion, that Mike's Holiday's unsuccessful objections related to—and were not distinct in all respects from—the just-compensation proceedings. The district court explained its conclusion: Mike's Holiday's "just compensation claim and objection to the taking in this matter arise from the same set of facts." The record supports the district court's conclusion because Mike's Holiday objected to the taking based on MnDOT's description of the "lands to be

13

taken" and argued that the description directly relates to just compensation. Thus, MnDOT's reliance on *Hensley* is misguided.[3]

In sum, the legislature's intent is readily discernable from the plain and unambiguous language of section 117.031(a), statutory construction is neither necessary nor permitted, and we therefore apply the statute's plain meaning. *See City of Grant*, 636 N.W.2d at 312. We therefore hold that reasonable attorney fees and expenses awarded in an eminent-domain proceeding under Minn. Stat. § 117.031(a) must relate to the work performed to obtain the final judgment or award for damages and may include fees incurred in defending an objection to the eminent-domain proceeding.

## II. The district court did not abuse its discretion in awarding Mike's Holiday attorney fees and costs.

MnDOT argues that the district court "abused its discretion when determining the costs and fees owed under the statute by misapplying the lodestar methodology." Mike's Holiday urges us to affirm, arguing that the district court "made findings on each of the [lodestar] factors in its evaluation of the overall reasonableness of the award" and "avoided re-analyzing, or double counting" in determining the hours expended and hourly rate.

---

[3] In addition, MnDOT's reliance on *Hensley* and *Milner v. Farmers Insurance Exchange*, 748 N.W.2d 608, 624 (Minn. 2008), is undermined by the shared posture of those cases. In both cases, the lower court did not assess the reasonableness of an attorney-fee award in light of the mixed success of the party seeking fees. *Hensley*, 461 U.S. at 440; *Milner*, 748 N.W.2d at 624. By contrast, the district court here explicitly considered Mike's Holiday's mixed success in reaching its fee award. The district court explained that, while "the settlement amount was less than the amount initially sought by [Mike's Holiday], it significantly exceeds the initial offer, demonstrating substantial success for" Mike's Holiday.

Appellate courts "review the reasonableness of a particular [attorney-fee] award for an abuse of discretion." *State by Comm'r of Transp. v. Krause*, 925 N.W.2d 30, 32-33 (Minn. 2019). A district court abuses its discretion when it "errs as a matter of law in applying improper standards in an award of fees" or makes clearly erroneous findings of fact in determining the reasonable value of counsel's work. *Green v. BMW of N. Am., LLC*, 826 N.W.2d 530, 534-35 (Minn. 2013) (quotation omitted); *see also County of Dakota v. Cameron*, 839 N.W.2d 700, 711 (Minn. 2013) ("We will not set aside a district court's factual findings underlying an award of attorney fees unless they are clearly erroneous." (quotation omitted)).

The reasonableness of attorney fees and expenses awarded under section 117.031(a) is measured by the lodestar method. *State by Comm'r of Transp. v. Schaffer*, 8 N.W.3d 220, 223 (Minn. 2024). Under that method, the district court applies a two-step process. *Id.* First, the district court "determines the number of hours reasonably expended on the litigation and multiplies that number by a reasonable hourly rate." *Id*. (quotation omitted). Second, the court "evaluates the overall reasonableness of the award," considering factors including "the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client." *Id.* (emphasis omitted) (quotation omitted).

Based on its consideration of the factors in the second part of the lodestar analysis, the district court may "enhance or decrease the lodestar amount, although 'many of these

factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Krause*, 925 N.W.2d at 33 (quoting *Hensley*, 461 U.S. at 434 & n.9). "[T]he amount involved and the results obtained must be addressed in the initial lodestar calculation when determining the reasonable number of hours expended." *Id.* (quotation omitted). And when a party challenges the reasonableness of an attorney-fee request, "the district court must provide a concise but clear explanation of its reasons for the fee award." *Id.* at 35 (quotation omitted).

Applying the lodestar analysis, the district court determined that the attorneys representing Mike's Holiday charged reasonable hourly rates before assessing whether the hours billed were reasonable.[4] The district court concluded that "all the work . . . performed" as detailed in the attorney's affidavit "was performed for the benefit of [Mike's Holiday] to secure just compensation for the taking." And the district court noted that the fee request "properly excluded charges for unrelated and duplicative work and reduced fees proportionally where work benefitted multiple clients to avoid double billing."

To provide context to the district court's decision, we add that the district court did not enhance or multiply the lodestar during the second part of its analysis. We also note that Mike's Holiday did not ask the district court to enhance the lodestar amount, while MnDOT asked the district court to reduce the lodestar amount during the second part of its analysis.

---

[4] MnDOT does not challenge on appeal the reasonableness of the hourly rates charged.

On appeal, MnDOT challenges the amount awarded on three grounds, which we discuss in turn. First, MnDOT argues that the district court "misapplied" the lodestar method because it did not consider the *Paulson* factors in the first lodestar step and only considered those factors in determining whether the lodestar amount should be adjusted downwards. In *State by Head v. Paulson*, the Minnesota Supreme Court held that, "[a]bsent any statutory limitations," the factors considered in determining reasonableness of an attorney-fee award include "[1] the time and labor required; [2] the nature and difficulty of the responsibility assumed; [3] the amount involved and the results obtained; [4] the fees customarily charged for similar legal services; [5] the experience, reputation, and ability of counsel; and [6] the fee arrangement existing between counsel and the client." 188 N.W.2d 424, 426 (Minn. 1971).

MnDOT's argument is unavailing. Our caselaw permits overlap between the two lodestar steps. For example, in *Cameron*, the supreme court noted that a district court must "consider all relevant circumstances" in setting a lodestar amount but specifically applied the *Paulson* factors in the second step to "evaluate[] the overall reasonableness" of an award. 839 N.W.2d at 711 (quotation omitted); *see also Krause*, 925 N.W.2d at 34 (applying *Cameron*). Rather than delineating between the two steps of the lodestar method, the caselaw highlights the interrelated nature of these steps.

The district court assessed each of the *Paulson* factors and determined that (1) the hours billed were reasonable based on the "duration and complexity" of the case; (2) Mike's Holiday's attorneys exercised "proper billing judgment" in the hours

17

expended;[5] (3) the "hours billed [were] reasonable in light of the overall relief obtained"; (4) the fees charged "reflect[ed] a reasonable rate" and were "proportionate" with fees "customarily charged for similar legal services"; (5) counsel's billing amount was reasonable given their experience, reputation, and ability; and (6) the fee arrangement between Mike's Holiday and its counsel was typical. We conclude that the district court adequately considered each *Paulson* factor and did not duplicate factors or ignore any single *Paulson* factor.

Second, MnDOT contends that the district court failed to consider adequately the third *Paulson* factor—the amount involved and results obtained—in its analysis, arguing that proper consideration of this factor "strongly support[s] reducing hours sought by [Mike's Holiday] because no reasonable 'paying client' would have paid $127,675.10 in fees and costs to litigate this matter in which their net gain was $86,300." MnDOT emphasizes that Mike's Holiday recovered only 21 cents of each dollar sought as damages and cites *Milner*, which states that, in applying the third *Paulson* factor to adjust the lodestar amount, the district court "should focus on whether the hours expended are reasonable in relation to the overall relief obtained." 748 N.W.2d at 623.

The district court concluded that the results obtained supported the attorney-fee award. The district court reasoned that Mike's Holiday's just-compensation claim arose

---

[5] In determining the reasonableness of attorney hours submitted under the first lodestar step, the district court considered the first and second factors together. Based on "the duration and complexity" of the case and counsel's "proper billing judgment," the district court determined that the billed hours were "reasonable." The district court found that the litigation "spann[ed] over five years and involv[ed] extensive documentation, required substantial research, collaboration, and preparation."

18

from the same "set of facts" as its unsuccessful objections or unfiled claims, and thus, the court declined to "dissect" Mike's Holiday's "successes and failures on individual motions and . . . instead assess[ed] the success of the representation" as a whole. The district court concluded that the "final award is approximately a 585 percent increase from (or nearly seven times greater than) MnDOT's initial offer." The district court specifically considered the final settlement award and found that, "[a]lthough the settlement amount was less than the amount initially sought by [Mike's Holiday], it significantly exceeds the initial offer, demonstrating substantial success" for Mike's Holiday.

A district court may reduce an award of attorney fees if it concludes that the amount involved or the results obtained do not support the award. *Cameron*, 839 N.W.2d at 712 (affirming a fee-award reduction under the results-obtained factor when the district court found that it "did not go along with the bulk of [appellant's] arguments"). And when a plaintiff has mixed success, the district court may consider whether unsuccessful claims related to successful claims and whether the fee award is reasonable given the plaintiff's level of success. *Hensley*, 461 U.S. at 434. If an unsuccessful claim for relief is unrelated to a successful claim, fees should not be awarded for time expended on the unsuccessful claim. *Id.* at 434-35. When the claims "involve a common core of facts" or are based on "related legal theories," however, it is difficult to divide hours expended on a "claim-by-claim basis" and "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.*; *see also Musicland Grp., Inc. v. Ceridian Corp.*, 508 N.W.2d 524, 535 (Minn. App. 1993) (applying *Hensley* in addressing the availability of statutory attorney fees incurred in bringing an action under

19

the Minnesota Environmental Response and Liability Act), *rev. denied* (Minn. Jan. 27, 1994).

The final damages awarded to Mike's Holiday pursuant to a settlement between the parties—$100,000—greatly exceeded MnDOT's final offer before litigation—$14,600. The damages award determined by the commissioners before settlement was over $200,000. The settlement agreement also expressly reserved Mike's Holiday's right to move for an award of attorney fees as provided by statute. Moreover, the attorney-fee award is consistent with the remedial nature of statutory fee-shifting provisions. *See Kvidera v. Rotation Eng'g & Mfg. Co.*, 705 N.W.2d 416, 424-25 (Minn. App. 2005) ("[S]tatutory penalties permitting the award of attorney fees are designed to encourage parties with potentially modest damages to bring their claims."). Under these circumstances, we discern no abuse of discretion in the district court's conclusion that the attorney-fee award was reasonable given the final damages awarded to Mike's Holiday. *See Cameron*, 839 N.W.2d at 711 ("There is no precise rule or formula for applying the results-obtained factor . . . ." (quotation omitted)).

Third and finally, we address MnDOT's challenges to the district court's decision to award attorney fees for time expended on pleadings for motions in another action, a joint-defense agreement with another property owner, and an inverse-condemnation petition that has not been filed.[6] Above, we concluded that MnDOT did not preserve its

---

[6] A party may assert an inverse-condemnation claim when the government has appropriated land without attempting "formal exercise of the power of eminent domain." *Alevizos v. Metro. Airports Comm'n*, 216 N.W.2d 651, 657 (Minn. 1974); *see also Stenger v. State*,

argument that these fees were outside the scope of a section 117.031(a) award as a matter of law, but here, we address the reasonableness of these fees.

The district court acknowledged that the attorneys representing Mike's Holiday also represented other parties in "several pending or finalized cases [that] involve the same set of takings." The district court found that, "[g]iven the limited legal counsel available in the area, overlap in research, drafting, and meetings between these cases [was] inevitable." The district court concluded "[u]pon review" that "counsel appropriately reduced [their] hours when serving multiple clients simultaneously" in separate matters. The district court also determined that counsel's time spent on an inverse-condemnation claim was reasonable and "a logical extension of [Mike's Holiday's] overall legal strategy and comprehensive representation in this matter."[7]

Caselaw recognizes that the district court "is in a better position than" an appellate court to assess the reasonableness and relatedness of fees incurred. *Milner*, 748 N.W.2d at 622. We are not persuaded to overturn the fee award, for three reasons. First, the record supports the district court's findings about the complicated and extended duration of this case. MnDOT's initial condemnation petition included 12 parcels and triggered extensive

---

449 N.W.2d 483, 484 (Minn. App. 1989) ("Actions for inverse condemnation must be brought through an action in mandamus."), *rev. denied* (Minn. Feb. 28, 1990).

[7] The district court also addressed MnDOT's concern about the potential for a double recovery by Mike's Holiday and ordered that, "should [Mike's Holiday] pursue this [inverse-condemnation] claim in the future, counsel would not be permitted to 'bill' MnDOT again for previously expended and paid time."

litigation that spanned five years.[8] Second, the district court presided over this litigation and much of the pendent litigation. The district court also analyzed the fee request given work on other legal actions and an unfiled inverse-condemnation claim. Having completed this analysis, the district court determined that the fee request was "appropriately reduced" to address overlap. Indeed, MnDOT does not argue on appeal that the district court clearly erred in finding that counsel appropriately reduced their billing to account for representing several clients in various aspects of the condemnation petition. Third, the district court determined that the lodestar amount was for work connected to Mike's Holiday's overall legal strategy in this just-compensation proceeding.

In sum, the district court did not abuse its discretion by awarding Mike's Holiday reasonable attorney fees and expenses under Minn. Stat. § 117.031(a) using the lodestar method. And, as required, it provided "a concise but clear explanation of its reasons for the fee award." *Krause*, 925 N.W.2d at 35 (quotation omitted).

**DECISION**

Minnesota Statutes section 117.031(a) does not limit the scope of attorney fees and expenses that may be awarded in an eminent-domain proceeding provided that such fees and expenses are reasonable and relate to the final judgment or award for damages. The district court therefore did not err as a matter of law by awarding Mike's Holiday reasonable attorney fees that included its unsuccessful defense of objecting to MnDOT's

---

[8] *See State by Comm'r of Transp. v. JKJ Holdings, LLC*, 22 N.W.3d 168, 179-80 (Minn. App. 2025) (reversing and remanding the dismissal of MnDOT's appeal to the district court of a commissioners' award arising from the same underlying petition as here but related to a different parcel).

condemnation petition. And the district court appropriately exercised its discretion by applying the lodestar method to determine "reasonable attorney fees" and expenses under Minn. Stat. § 117.031(a). Accordingly, we affirm the district court's judgment.

**Affirmed.**